UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>OLUWATOMIWA AKINTOLA,<br><br>Defendant.<br><br>_____<br><br>OLUWATOMIWA AKINTOLA,<br><br>Movant,<br><br>-v.-<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | 21 Cr. 472-3 (KPF)<br><br>**OPINION AND ORDER**<br><br>23 Civ. 3839 (KPF) |

KATHERINE POLK FAILLA, District Judge:

Oluwatomiwa Akintola was a key participant in a wide-ranging romance scam, with roles in both the fraud and the money-laundering components of the scheme. Even after his arrest and detention in this case, Mr. Akintola continued to access fraud proceeds while on pretrial release. Ultimately, Mr. Akintola pleaded guilty in June 2022 to a money laundering conspiracy charge, and was sentenced in October 2022 principally to a term of 57 months' imprisonment.

Mr. Akintola was permitted to surrender to the Bureau of Prisons (the "BOP") in January 2023. A few months after his surrender, Mr. Akintola moved for vacatur of his plea and conviction under 28 U.S.C. § 2255, claiming ineffective assistance of counsel at his plea and violations of the Speedy Trial

Act, 18 U.S.C. §§ 3161-3174, and Federal Rule of Criminal Procedure 11.  More recently, Mr. Akintola has requested that the Court resentence him in light of a retroactive amendment to the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines").  For the reasons set forth in the remainder of this Opinion, the Court denies both motions.

**BACKGROUND**[1]

### A.   Factual Background

From at least 2018 up to and including 2021, Mr. Akintola participated in a scheme to launder millions of dollars of fraud proceeds — specifically, proceeds from victims of online romance scams.  In brief, Mr. Akintola or his co-conspirators used online aliases to contact victims on various online dating sites, and convinced the victims under false pretenses to transfer funds to Mr. Akintola and others.  (*See* PSR ¶¶ 16-20).  Certain of the conspirators posed as potential romantic partners using the aliases "Diego Francisco," "Richard Francisco," or "Tom Francisco."  (*Id.* ¶ 17).  Mr. Akintola himself used the name "John" to communicate with prospective victims, including women on the "SilverSingles" online dating site.  (Dkt. #135 at 3-4).  Victims were told to

---

[1]   Unless otherwise indicated, references to docket entries in this Opinion pertain to the docket in the criminal case, *United States* v. *Akintola*, No. 21 Cr. 472-3 (KPF).  The Court refers to Mr. Akintola's Final Presentence Investigation Report as the "PSR" (Dkt. #124); to his plea transcript as "Plea Tr." (Dkt. #109); to his sentencing transcript as "Sent. Tr." (Dkt. #152); to his opening brief in support of his Section 2255 motion as "Def. 2255 Br." (Dkt. #231); to the Government's brief in opposition as "Gov't 2255 Opp." (Dkt. #244); to the Affidavit of David Touger as "Touger Aff." (Dkt. #244-3); to Mr. Akintola's reply brief as "Def. 2255 Reply" (Dkt. #253); and to his brief in support of his motion for a reduction in sentence as "Def. 3582 Br." (Dkt. #272).  References to Mr. Akintola's submissions use the pagination provided by this Court's Electronic Case Filing ("ECF") system.

2

transfer funds to bank accounts controlled by the conspirators, or to obtain and mail cashier's checks or money orders in the names of accounts controlled by conspirators. (PSR ¶ 21).

Mr. Akintola created and controlled a shell company (the "Akintola Shell Company") with multiple bank accounts (the "Akintola Shell Company Accounts") that were used in furtherance of the money laundering scheme. (PSR ¶¶ 36-40). Mr. Akintola's accounts received over $1,000,000 in fraud proceeds from romance scam victims; through his actions, the funds were laundered in order to prevent their detection as fraud proceeds and, more importantly, their recovery by the victims. (*Id.*). The victim funds laundered by Mr. Akintola were amassed from at least six separate individuals who were victims of the scam. (Dkt. #135 at 1).

## B.   Procedural Background

### 1.   The Complaint and the Arrest

On May 25, 2020, Mr. Akintola and several co-defendants were charged by complaint. (Dkt. #1). On June 2, 2021, Mr. Akintola was arrested at Newark International Airport. At the time of his arrest, Mr. Akintola was in possession of four phones and several false identification documents, including documents in the names of "Christopher Williams" and "Michael Robinson." (Dkt. #135 at 2). After waiving his *Miranda* rights, Mr. Akintola falsely advised law enforcement agents that the Akintola Shell Company was in a fact a legitimate company that sold phones, cars, and laptops, rather than a money laundering facility. He also denied knowing who "Christopher Williams" was,

despite the fact that Mr. Akintola was arrested in possession of a bank card in that name with his own face on it.  (*Id.*).

Mr. Akintola was presented on June 2, 2021, and released on bail on June 9, 2021.  (Dkt. #8, 17).  Within one week of his release, Mr. Akintola accessed scheme proceeds that were in a bank account in the name of "Michael Robinson."  (Dkt. #135 at 3).  Specifically, Mr. Akintola made multiple cash ATM withdrawals, including withdrawals on or about July 1, 2021, and July 6, 2021, each in the amount of $2,000.  (*Id.*).  Video footage from the ATM shows that Mr. Akintola was the individual withdrawing the funds.  (*Id.*).

### 2.  The Indictment and the Pretrial Conferences

On July 26, 2021, a grand jury returned a three-count Indictment, charging Mr. Akintola in Counts One and Two.  (Dkt. #29).  Count One charged Mr. Akintola and his co-defendants with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  Count Two charged Mr. Akintola and his co-defendants with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349.

On August 3, 2021, the Court entered an order scheduling an arraignment and initial conference in the matter for August 5, 2021, and excluding time under the Speedy Trial Act between August 3 and August 5, 2021.  (Dkt. #32).  Mr. Akintola and his co-defendants, except for co-defendant Nadine Wade, consented to the exclusion of time.  The Court found that "the ends of justice served by excluding such time outweigh the interests of the public and the defendants in a speedy trial, because it will permit defense

counsel to continue to review discovery and will facilitate Defendant Wade's resolution of extant issues with obtaining legal representation in this matter." (*Id.*).

On August 5, 2021, Mr. Akintola and his co-defendants appeared for their arraignment and initial pretrial conference before the Court. At the end of the proceeding, the Court scheduled the next status conference for November 2, 2021, and the Government moved to exclude time under the Speedy Trial Act until that date. (Dkt. #42 ("Aug. 5, 2021 Tr.") at 27). After discussing the motion with defendants and their counsel — and obtaining consent from all — the Court excluded the time. In explaining its decision to the defendants, the Court noted that exclusion of time would permit the defendants to receive and review discovery, "to speak with your attorneys about what that discovery indicates, and to discuss the options available to each of you." (*Id.* at 27-30). To the extent that any defendant was not fully familiar with the Speedy Trial Act, the Court directed that defendant to speak with his or her counsel. (*Id.* at 27-28).

On November 2, 2021, Mr. Akintola and his co-defendants appeared for the next pretrial conference in the case. At the conference, the defendants present, including Mr. Akintola, jointly requested an additional 90 days to continue reviewing discovery before setting a motion schedule. (Dkt. #246 ("Nov. 2, 2021 Tr.") at 10).[2] The Court scheduled another conference for

---

[2]    Between the two conferences, co-defendant Habiba Fagge was accepted into this District's Young Adult Opportunity Program, and her case was transferred to Judge Ronnie Abrams. (Dkt. #50).

February 1, 2022, and the Government moved to exclude time until that date. (*Id.* at 12).  Mr. Akintola and his co-defendants consented to the exclusion of time.  (*Id.* at 12-13).  The Court granted the exclusion, explaining to the defendants that:

> And I do agree with your attorneys and the government that you need to take a reasonable amount of time to review that discovery, to discuss it with your attorneys, to discuss whether there are motions that are properly brought in this case, and to discuss whether it is worth reaching out to the government either for more discovery, for clarity about the discovery you've already received, or to discuss possibly resolving the case short of trial.

(*Id.* at 13).  As at the initial conference, the Court directed its remarks about the Speedy Trial Act "more to the defendants than their counsel," and advised the defendants to speak with their attorneys if they had any questions about the Speedy Trial Act.  (*Id.* at 14).

On February 1, 2022, Mr. Akintola and his co-defendants appeared for another status conference.  At the conference, the defendants, including Mr. Akintola, jointly requested an additional 60 days to continue reviewing discovery.  (Dkt. #248 ("Feb. 1, 2021 Tr.") at 8).  The Court granted that request and scheduled a status conference for April 19, 2022.  (*Id.* at 10). Again, the Government moved to exclude time, and again, all defendants — including Mr. Akintola — consented to the exclusion of time.  (*Id.* at 10-11). The Court then excluded time until the date of the next status conference on April 19, 2022, sourcing its exclusion again to the volume of discovery in the

case and the need for the defendants and their counsel to review that

discovery.  (*Id.* at 11-12).

One day before the scheduled pretrial conference, on April 18, 2022, the

Government filed a letter motion requesting an adjournment of the conference.

(Dkt. #73).  As the Government explained:

> In conferring with defense counsel in advance of the
> conference, the Government understands that the
> defendants will be requesting additional time to further
> review discovery.  The Government has no objection to
> an approximately one-month adjournment of the status
> conference to allow the defendants additional time to
> review discovery and to permit the parties to continue
> plea discussions, after which time (*i.e.*, at the next
> conference) the Government expects to request a trial
> schedule.

(*Id.*).  In the same letter, the Government moved to exclude time, and

represented to the Court that its request was "on consent" of all defendants,

including Mr. Akintola.  (*Id.*).  The Court adjourned the status conference until

June 3, 2022, and also excluded time under the Speedy Trial Act, finding "that

the ends of justice served by excluding such time outweigh the interests of the

public and the defendant in a speedy trial because it will permit defense

counsel to continue to review discovery and allow the parties to consider a pre-

trial disposition of this case." (Dkt. #74).

### 3.  The Guilty Plea

One day before the scheduled pretrial conference, on June 2, 2022, Mr.

Akintola entered a plea of guilty pursuant to a written plea agreement with the

Government (the "Plea Agreement" or "Plea Agmt.").  (*See* Plea Tr.; PSR ¶ 6).  In

the Plea Agreement, Mr. Akintola agreed to plead to Count One of the

Indictment, which charged him with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).  In addition, the parties stipulated that Mr. Akintola's sentencing range under the Guidelines was 57 to 71 months' imprisonment.  (PSR ¶ 6).  As part of the Plea Agreement, Mr. Akintola agreed to waive his right to appeal, or to collaterally challenge, including by means of an application under 28 U.S.C. § 2255, any sentence of imprisonment within or below that range.

During the plea proceeding, the Court began by confirming that Mr. Akintola wished to plead guilty to the Count One of the Indictment, which charged him with conspiracy to commit money laundering.  (Plea Tr. 3).  It then placed Akintola under oath, and asked him questions to determine his competence to plead guilty.  (*Id.* at 4-7).  After finding him competent, the Court confirmed with Mr. Akintola that he had reviewed with his counsel, David Touger, the charge to which Mr. Akintola proposed to plead guilty, any defenses that he might have to that charge, and the consequences of entering a guilty plea.  (*Id.* at 7-8).  Mr. Akintola also represented that he was satisfied with Mr. Touger's representation of him in the matter.  (*Id.* at 8).  Thereafter, the Court reviewed with Mr. Akintola the rights that he had, and would be waiving, by entering a plea of guilty.  (*Id.* at 8-14).

From there, the Court again confirmed its understanding that Mr. Akintola intended to plead guilty to Count One, "which charges you with conspiracy to commit money laundering in violation of Title 18, United States Code, Section 1956(h)."  (Plea Tr. 14).  One of the prosecutors then outlined for

the Court and for Mr. Akintola the elements of the money laundering offense; at the conclusion, Mr. Akintola confirmed that he understood "that if you were to proceed to trial, that is what the government would have to prove at trial[.]" (*Id.* at 14-16). The Court then reviewed the penalties associated with the offense, noting in particular that the money laundering charge carried a statutory maximum term of 20 years' imprisonment. (*Id.* at 16-19).

The Court next confirmed with Mr. Akintola that he was pleading guilty pursuant to a written plea agreement with the Government, and reviewed with him the terms of that agreement, including its waiver provisions. (Plea Tr. 24-33; *see also id.* at 29 ("You're waiving your right to appeal or to collaterally challenge any sentence within or below the stipulated guidelines range of 57 to 71 months' imprisonment.")). Mr. Akintola then allocuted to the money laundering conspiracy offense. He acknowledged that he "agreed with others to launder criminal proceeds in the Southern District of New York from in about 2018 through 2021 using the banking system." (*Id.* at 34). More specifically, Mr. Akintola admitted his contemporaneous understanding that: (i) the money being laundered constituted the proceeds of a romance scam; (ii) "the money was somehow obtained illegally"; (iii) "these funds were deposited and/or withdrawn, deposited in or withdrawn from bank accounts in a way that concealed where they came from, that concealed that they were in fact the proceeds of criminal activity"; and (iv) what he was doing "was wrong and illegal." (*Id.* at 35-36). At the end of the proceeding, the Court accepted Mr. Akintola's guilty plea. (*Id.* at 38).

### 4.    The Sentencing

The Probation Office prepared the Presentence Investigation Report for
Mr. Akintola's sentencing.  Its Guidelines calculations replicated those of the
parties in the Plea Agreement.  (PSR ¶¶ 80-90, 93, 138).  In its Sentencing
Recommendation, the Probation Office recommended a below-Guidelines
sentence of 36 months' imprisonment, citing Mr. Akintola's lack of criminal
history, family ties, and history of legitimate employment.  (*Id.*, Sentencing
Recommendation).  Akintola filed a sentencing submission requesting a non-
incarceratory sentence (Defense Sentencing Letter dated September 22, 2022),
while the Government filed a sentencing submission requesting a sentence
within the stipulated Guidelines range of 57 to 71 months' imprisonment (Dkt.
#135).

Sentencing took place on October 6, 2022.  (Sent. Tr.; *see also* Dkt. #150
(Judgment)).  During the sentencing proceeding, the Court confirmed with the
parties that they had each had an adequate opportunity to review the
Presentence Investigation Report and that they had no objections to its
contents, save for a possible exception to the payment schedule for any
financial conditions.  (Sent. Tr. 3-6).  The Government then opined that, based
on its investigation, Mr. Akintola was "towards the top of the culpability of the
defendants in this case," in light of the facts that he: (i) laundered over
$1 million; (ii) was also involved in the fraudulent romance scheme,
manipulating the elderly and the vulnerable; (iii) lied to agents at the time of
his arrest; (iv) withdrew proceeds of the fraud while on pretrial release.  (*Id.* at

9, 14-20).  Counsel for Mr. Akintola then spoke in mitigation, explaining certain circumstances that led his client to participate in the scheme, and the depths of Mr. Akintola's remorse for his conduct.  (*Id.* at 21-27).  Mr. Akintola also spoke at sentencing, apologizing for his conduct.  (*Id.* at 28).

After taking a recess to consider the matter, the Court imposed Mr. Akintola's sentence.  After calculating the Guidelines in the same manner as had the parties and the Probation Office, the Court considered the parties' sentencing recommendations:

> [I] appreciate the good that Mr. Akintola has done, and I appreciate in particular the post-offense good that he has done with respect to service to the community, employment and education, and rededication to his family.
>
> But there is as well a large amount of less good, bad conduct to account for.  And I begin in this regard by noting that I don't fully accept or I don't think it fully answers the issue to argue that Mr. Akintola's mother's tragic passing led him to be involved in this conspiracy and this conduct.  …  I imagine it may have some role to play, but I don't think it explains all of this.  Nor do I find fully satisfying or fully justifying the argument that by the time Mr. Akintola understood the full scope of the conspiracy, it was too late to get out.
>
> The conduct in this case, everyone should agree, was egregious.  And I've seen a lot of defendants involved in schemes involving identity theft and fraud, and sometimes there are e-mail takeovers or spoofing schemes, but what surprises me was the degree of Mr. Akintola's participation.  I've had defendants who have negotiated a single bad check or they've done one or two ATM withdrawals.  I've encountered very few with the depth of Mr. Akintola's involvement, and even fewer who have involvement on both the fraud and the money laundering sides of the scheme.

* * *

11

> I'm also very much concerned about the post-offense conduct.  I understand, but only to a degree, the argument that in the immediate rush of the arrest there may have been a desire to just say anything and get himself out of the situation.  But there's really no excuse, and there are many concerns that I have about recidivism or about the need for specific deterrence for Mr. Akintola, leaving detention and immediately going back to fraudulent conduct.
>
> Mr. Touger has identified a number of cases, a number of articles and a number of studies regarding the usefulness or the appropriateness of certain guidelines.  And I'm familiar with them.  I have also read them.  I've thought about them.  And I am aware of the existence of disagreements with certain guidelines.  I am aware of disagreements on a policy level, and at times, I, too, if you will, agree with the disagreements, and there are times I do believe that the guidelines are too high or too low.
>
> But on all of these facts, I don't see that here.  And I'm therefore impose imposing a sentence at the bottom of the guidelines range of 57 months.

(Sent. Tr. 30-33).  The Court permitted Mr. Akintola to remain out on bail, and set a surrender date of January 9, 2023.

### 5.   The Instant Motions

Mr. Akintola did not appeal from his conviction or sentence.  Instead, in May 2023, Mr. Akintola moved to vacate or set aside his conviction pursuant to 28 U.S.C. § 2255, claiming ineffectiveness of counsel and deficiencies in his guilty plea.  (Dkt. #231).  In response, and given the nature of his allegations, this Court forwarded to Mr. Akintola an attorney-client privilege waiver form (Dkt. #233), which he then returned.  The Government filed its opposition submission on August 25, 2023, which submission enclosed an affidavit from Mr. Touger addressing certain claims made by Mr. Akintola in his motion.

(Dkt. #244).  Mr. Akintola filed his reply submission on or about September 20, 2023.  (Dkt. #253).

In his affidavit, Mr. Touger begins by noting that "[t]he facts that Mr. Akintola states in his motion to vacate are not a true and full version of the history of this matter."  (Touger Aff. ¶ 3).  To the contrary, Mr. Touger explained that he had participated in numerous meetings with Mr. Akintola and his family in person and over Zoom.  (*Id.* ¶ 4).  In one of their first meetings, Mr. Touger explained to Mr. Akintola the operation of the Speedy Trial Act; Mr. Akintola understood the discussion, and "consistently agreed" to every adjournment request made in the case.  (*Id.* ¶ 5; *see also id.* at ¶ 20 ("Never once did he ever demand that I ask for [a] Speedy Trial.  I explained to Mr. Akintola why these adjournments were advantageous for us and he agreed each time.")).  Mr. Touger also gave to Mr. Akintola a copy of the Rule 16 discovery produced by the Government in the case; he and Mr. Akintola reviewed the discovery together and separately on multiple occasions.  (*Id.* ¶¶ 6-9, 20).

On or about December 8, 2023, and following an amendment to the Guidelines that was made retroactive, Mr. Akintola moved for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(2).  (Dkt. #272).  The specifics of that motion will be discussed later in this Opinion.

**DISCUSSION**

**A.    The Court Denies Mr. Akintola's Section 2255 Motion**

Mr. Akintola brings two types of challenges to his conviction (as distinguished from his sentence).  *First*, he claims that he received ineffective assistance of counsel in connection with his guilty plea in this case.  (Def. 2255 Br. 4-5).  In particular, Mr. Akintola claims that Mr. Touger: (i) failed to advise him that he had a valid claim for dismissal of the Indictment under the Speedy Trial Act, and (ii) failed to ensure that he was aware of the discovery in the case and the elements of the offense to which he was pleading guilty.  (*Id.* at 5). *Second*, in something of a mirror-image of his ineffectiveness claims, Mr. Akintola claims that his guilty plea was not knowing and voluntary, because no one explained the charges to him or advised him of his right to move for dismissal based on the Speedy Trial Act violation.  (*Id.* at 5-7).  In addition, Mr. Akintola suggests that his plea was not knowing and voluntary because Mr. Touger advised him that he had worked out a deal with the Government that would result in Mr. Akintola receiving a sentence of probation, or no more than one to one-and-a-half years in jail.  (*Id.* at 5).  Finally, Mr. Akintola advances claims that Mr. Touger did not adequately review, or review with him, the Rule 16 discovery produced by the Government.  (*Id.* at 5; Def. 2255 Reply 2-4).

**1.    Applicable Law**

**a.    Motions Under 28 U.S.C. § 2255**

A prisoner in federal custody may seek to have his sentence vacated, set aside, or corrected on the grounds that it "was imposed in violation of the

Constitution or laws of the United States, or that the [trial] court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"  28 U.S.C. § 2255(a).[3]  However, the grounds for such a collateral attack under Section 2255 are much more limited than those available on a direct appeal. *See United States* v. *Addonizio*, 442 U.S. 178, 185 (1979).  Relief may lie "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States* v. *Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill* v. *United States*, 368 U.S. 424, 428 (1962)); *accord Cuoco* v. *United States*, 208 F.3d 27, 30 (2d Cir. 2000).

In resolving a motion under 28 U.S.C. § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see also, e.g., Pham* v. *United States*, 317 F.3d 178, 185 (2d Cir. 2003) (noting that 28 U.S.C. § 2255 does not permit summary dismissals of motions that present facially valid claims).  That said, the filing of a Section 2255 motion does not automatically entitle the movant to a hearing — as, for example, in instances in which a movant's allegations are "vague, conclusory, or palpably incredible."  *Machibroda* v. *United States*, 368 U.S. 487, 495 (1962). Rather, it is within the district court's discretion to determine the scope and

---

[3]     The caselaw refers to a person who files a Section 2255 motion alternatively as a "movant," a "petitioner," a "prisoner," or a "defendant."

nature of a hearing.  *See Chang* v. *United States*, 250 F.3d 79, 85-86 (2d Cir. 2001) ("It was, therefore, within the district court's discretion to choose a middle road [requiring a detailed affidavit from counsel] that avoided the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing.").

### b.    Ineffective Assistance of Counsel Claims

One potential basis for relief under Section 2255 occurs when a defendant has received the ineffective assistance of counsel.  A defendant in a criminal proceeding has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages of the proceeding, including the entry of a guilty plea.  *See, e.g.*, *Hill* v. *Lockhart*, 474 U.S. 52, 58 (1985).

In order to succeed on a claim of ineffective assistance of counsel, a movant must meet the two-pronged test established by *Strickland* v. *Washington*, 466 U.S. 668 (1984).  *First*, the movant must show that his counsel's representation was deficient, falling below the objective standard of reasonableness.  *See id.* at 687-88.  During this first step, the standard of review is highly deferential and includes "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  "This presumption is overcome only if counsel failed to act reasonably considering all of the circumstances."  *United States* v. *Rosemond*, 958 F.3d 111, 121 (2d Cir. 2020).  A court evaluating arguments of ineffectiveness "must

16

avoid the distorting effects of hindsight and consider the lawyer's perspective at the time the decision was made." *Id.* Moreover, the Second Circuit has made clear that an attorney does not provide ineffective assistance by failing to raise frivolous arguments, even where requested by a client. *See, e.g.*, *Weingarten* v. *United States*, 865 F.3d 48, 53 (2d Cir. 2017).

*Second*, the movant must establish that his counsel's errors resulted in actual prejudice. *See Strickland*, 466 U.S. at 694. A movant satisfies this second prong by proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*; *see also United States* v. *Nolan*, 956 F.3d 71, 79 (2d Cir. 2020). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Garner* v. *Lee*, 908 F.3d 845, 862 (2d Cir. 2018).

In the specific context of guilty pleas, the prejudice analysis "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill* v. *Lockhart*, 474 U.S. at 59. "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see also Kovacs* v. *United States*, 744 F.3d 44, 51-52 (2d Cir. 2014) (discussing various ways that prejudice may be shown in the guilty plea context, including a forgone decision to proceed to trial or a more advantageous plea offer). The defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla* v. *Kentucky*, 559 U.S. 356, 372

(2010).  In this regard, the Second Circuit "requires some objective evidence other than defendant's assertions to establish prejudice." *Pham*, 317 F.3d at 182 (citing *United States* v. *Gordon*, 156 F.3d 376, 380-81 (2d Cir. 1998)).

A court is not required to conduct a *Strickland* inquiry in any particular order.  *See Strickland*, 466 U.S. at 697.  If the defendant does not successfully establish either the deficient performance prong or the prejudice prong, the entire claim fails, and the remaining, unaddressed step becomes moot.  *See id.*

### 2. Analysis

#### a. The Court Will Not Enforce Mr. Akintola's Appellate Waiver, Nor Will It Find Procedural Bar

Though the Government does not raise this argument, the waiver provision of Mr. Akintola's Plea Agreement seemingly bars him from bringing this motion.  It is settled law that "[a] defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable." *Sanford* v. *United States*, 841 F.3d 578, 580 (2d Cir. 2016) (collecting cases).

As noted, Mr. Akintola pleaded guilty pursuant to a written Plea Agreement with the Government in which he waived certain rights and agreed "not [to] file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 57 to 71 months' imprisonment." (Plea Agmt. 4).  During the plea proceeding, the Court drew Mr. Akintola's attention to the waiver paragraph of the Plea Agreement, and confirmed his waiver of his right to "to

appeal or to collaterally challenge any sentence within or below the stipulated guidelines range of 57 to 71 months' imprisonment."  (Plea Tr. 29).  *See* Fed. R. Crim. P. 11(b)(1)(N) ("During [the plea colloquy], the court must inform the defendant of, and determine that the defendant understands, the following: … (N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence[.]"); *see also United States* v. *Salmonson*, 759 F. App'x 106, 108 (2d Cir. 2019) (summary order) (finding appellate waiver to have been knowingly and voluntarily made, and thus enforceable).

The Court acknowledges that the Plea Agreement contained a carve-out for claims of ineffective assistance of counsel, and that several of Mr. Akintola's challenges sound in ineffectiveness.  *See generally United States* v. *Hernandez*, 242 F.3d 110, 113-14 (2d Cir. 2001) (noting procedural unfairness of using waiver provision to bar claims of ineffectiveness).  With respect to the remainder of his challenges, the Court interprets the Government's failure to raise the provision in its opposition papers as an instance of "waiving the waiver," as it were, and the Court will thus analyze all of Mr. Akintola's claims on the merits.  *See generally United States* v. *Quiroz*, 22 F.3d 489, 491 (2d Cir. 1994) (discussing circumstances in which Government failure to raise argument amounts to waiver of otherwise applicable waiver).[4]

---

[4]     For similar reasons, the Court finds that the Government has waived any claim of procedural bar attributable to Mr. Akintola's failure to raise his claims on direct appeal. *See Jiau* v. *United States*, No. 11 Cr. 161-1 (JSR) (JCF), 2016 WL 11201437, at *5 (S.D.N.Y. Nov. 16, 2016) ("Rather, the Government is considered to have 'forfeited or waived the argument' when it fails to raise procedural default, leaving it to the court's discretion whether to raise the issue itself." (citations omitted)), *report and recommendation adopted*, 2018 WL 2122817 (S.D.N.Y. May 8, 2018).

### b.    Mr. Akintola Has No Claim Under the Speedy Trial Act

### i.    The Speedy Trial Act and Its Exclusions

As noted, the first prong of the ineffectiveness inquiry considers whether counsel was deficient in his representation.  The Court therefore begins with Mr. Akintola's arguments under the Speedy Trial Act, which inform several of his claims.  The Speedy Trial Act provides, in relevant part, that trial on a criminal charge:

> shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).  The 70-day period, *i.e.*, the speedy trial clock, is subject to certain exclusions of time set forth in Section 3161(h) of the Act.  *See* 18 U.S.C. § 3161(h).

As the Government argues (Gov't 2255 Opp. 10-11), two exclusions appear to be implicated by Mr. Akintola's arguments.  The first exclusion concerns cases involving multiple defendants joined in a single indictment. Under this provision, the speedy trial clock is tolled for a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for a severance has been granted."  18 U.S.C. § 3161(h)(7); *see generally United States* v. *Nunez,* No. 22 Cr. 293 (JPO), 2023 WL 5432513 (S.D.N.Y. Aug. 23, 2023).  The Second Circuit has interpreted this section to mean that:

> cases involving multiple defendants are governed by a single speedy trial clock, which begins to run with the

> clock of the most recently added defendant, and . . .
> delay attributable to any one defendant is charged
> against the single clock, thus making the delay
> applicable to all defendants.

*United States* v. *Pena*, 793 F.2d 486, 489 (2d Cir. 1986); *accord United States* v.

*Vasquez*, 918 F.2d 329, 337 (2d Cir. 1990) (subsection "imposes a unitary time

clock on all co-defendants joined for trial"); *see also id.* at 336 (noting that

defendant cannot challenge the reasonableness of a delay unless the defendant

has first made a severance motion).

A second, separate provision of the Speedy Trial Act permits a district

judge to exclude time on the speedy trial clock "on the basis of his findings that

the ends of justice served by taking such action outweigh the best interest of

the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A).  In

determining whether such a continuance is appropriate following indictment,

the statute directs the judge to consider: (a) whether the failure to grant the

motion would make continuation of the proceeding impossible or result in a

miscarriage of justice, (b) whether the case is so unusual or complex as to

render it unreasonable to proceed within the time limits set by the Act, and

(c) whether in a case that is not unusual or complex, denial of a continuance

would deny the defendant or the Government continuity of counsel or

reasonable time necessary for effective preparation for trial.  *Id.* § 3161(h)(7)(B).

In addition, the court must articulate either orally or in writing its reasons for

finding that the ends of justice are served by the continuance.  *See United*

*States* v. *Bursey*, 801 F. App'x 1, 2-3 (2d Cir. 2020) (summary order) (collecting

cases); *see also Abakporo* v. *United States*, No. 18 Civ. 842 (VF), 2023 WL 8126349, at *18 (S.D.N.Y. Jan. 24, 2023).

### ii.   Analysis

Mr. Akintola's Speedy Trial Act challenges can be swiftly rejected.  To begin, Mr. Akintola argues that his counsel erred in failing to object to the exclusion of time under the Act because the exclusions were in fact designed to benefit a co-defendant, or because they were the product of counsel's own inattention to Mr. Akintola's case.  (*See* Def. 2255 Br. 5 ("In the coming months, counsel discussed no discovery with Akintola, conducted no investigation into the case, but led Akintola to believe that a thorough defense to the charges was being assembled and that he had a high likelihood of being exonerated by a jury if his case proceeded to trial."); Def. 2255 Reply 3-4).  The record of this case puts the lie to these arguments.  To the extent that the co-defendant to whom Mr. Akintola is referring is Ms. Fagge, her case was reassigned to Judge Abrams and was not considered by this Court in any Speedy Trial Act applications after the first conference.  To the extent that Mr. Akintola is suggesting that Mr. Touger agreed to the exclusion of time to assist other co-defendants or their counsel, the record makes clear that the defense requests for adjournments were predicated on the need for *all* counsel to review the voluminous Rule 16 discovery and advise their respective clients.  (*See supra at* 4-7).  At no time did Mr. Akintola object to any of the adjournments, nor did he ever suggest that he did not need the additional time that his counsel was seeking.

Also contrary to Mr. Akintola's arguments, this Court made detailed findings concerning the appropriateness of each requested exclusion before granting the Government and/or defense applications.  (*See* Def. 2255 Reply 4 ("In this case, the district court improperly excluded time without determining on the record, why such exclusions outweighed the best interest of the public and the defendant in a speedy trial.")).  No one present at the pretrial conferences was confused about the bases for the requests or the appropriateness of the exclusions granted.  Accordingly, Mr. Akintola has no viable challenge to his conviction based on purported Speedy Trial Act violations.[5]

### c.  Mr. Akintola Has No Claim Under Rule 11

Alternatively, Mr. Akintola claims that his guilty plea was not knowing and voluntary because he was not made aware of the charge to which he pleaded guilty, and because he understood that he would receive no more than a one-and-a-half-year term of imprisonment.  (*See* Def. 2255 Br. 6-7; Def. 2255 Reply 4).  As explained herein, these challenges also fail.

### i.  Challenges to a Plea on Collateral Review

Rule 11 of the Federal Rules of Criminal Procedure "sets forth requirements for a plea allocution and 'is designed to ensure that a defendant's plea of guilty is a voluntary and intelligent choice among the alternative

---

[5]    Given the absence of a Speedy Trial Act violation, the Court will not discuss Mr. Akintola's argument, repurposed under Rule 11, that his guilty plea was not knowing and voluntary because of the failure to advise him of the (non-existent) Speedy Trial Act violation.  (*See, e.g.*, Def. 2255 Br. 6-7; Def. 2255 Reply 3).

courses of action open to the defendant.'" *United States* v. *Andrades*, 169 F.3d 131, 133 (2d Cir. 1999) (citation omitted).  Among other things, Rule 11 requires the district court, after placing the defendant under oath, to address the defendant personally in open court and "inform the defendant of, and determine that the defendant understands" fifteen specific things, including, as relevant here, "the defendant's waiver of [certain specified] trial rights if the court accepts a plea of guilty," Fed. R. Crim. P. 11(b)(1)(F); "the nature of each charge to which the defendant is pleading," Fed. R. Crim. P. 11(b)(1)(G); and "any maximum possible penalty, including imprisonment, fine, and term of supervised release," Fed. R. Crim. P. 11(b)(1)(H).  "A variance from the requirements of [Rule 11] is harmless error if it does not affect substantial rights."  Fed. R. Crim. P. 11(h).[6]

In addition, to the extent a defendant's claims for vacating his conviction are predicated on statements contrary to those made during his guilty plea, a court can view such claims with skepticism.  *See, e.g.*, *United States* v. *Reyes*, 67 F. App'x 35, 38 (2d Cir. 2003) (summary order) ("Absent credible reasons for rejecting appellant's sworn statements in a plea agreement or at a Rule 11

---

[6]     *See also Rojas* v. *United States*, 803 F. App'x 526, 528 (2d Cir. 2020) (summary order):

> Where a Rule 11 challenge is brought in a motion under [28] U.S.C. § 2255, the "movant can successfully challenge [the] guilty plea conviction ... only by establishing that the violation constituted a constitutional or jurisdictional error, or by showing that the error resulted in a complete miscarriage of justice or in a proceeding inconsistent with the rudimentary demands of fair procedure." *Lucas* v. *United States*, 963 F.2d 8, 12-13 (2d Cir. 1992) (internal quotations and citations omitted).  The movant must also show prejudice, meaning that "he did not understand the consequences of his plea, or that, if he had been properly advised, he would not have pled guilty." *Id.* at 13.

allocution, such statements establish that the plea was entered knowingly and voluntarily."); *Adames* v. *United States*, 171 F.3d 728, 732 (2d Cir. 1999) ("A criminal defendant's self-inculpatory statements made under oath at his plea allocution ... are generally treated as conclusive in the face of the defendant's later attempt to contradict them." (citation omitted)); *see generally Blackledge* v. *Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").  Put somewhat differently, because "sworn testimony given during a plea colloquy 'carries such a strong presumption of accuracy ... a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made.'"  *United States* v. *Rivernider*, 828 F.3d 91, 105 (2d Cir. 2016) (quoting *United States* v. *Juncal*, 245 F.3d 166, 170-71 (2d Cir. 2001)).

### ii.    Analysis

Mr. Akintola's claims of defects in his plea proceeding are, like his Speedy Trial Act claims, not borne out by the record.  Mr. Akintola contends, for instance, that neither his counsel nor the Court "clearly explained the charges to him," which the Court understands to concern the money laundering conspiracy charge to which Mr. Akintola ultimately pleaded guilty, and not the bank fraud conspiracy charge that was later dismissed.  (Def. 2255

Br. 6-7; Def. 2255 Reply 4).  Not so, as the Court and the prosecutor discussed the money laundering conspiracy charge, its elements, and its penalties during the plea proceeding, and the Court confirmed that Mr. Akintola understood them fully before accepting his plea.  (Plea Tr. 14-19).  Separately, the Court confirmed with Mr. Akintola that he had "sp[oken] with your attorney about the charge to which you propose to plead guilty, and any defenses that you might have to that charge."  (*Id.* at 7; *see also* Touger Aff. ¶ 14 (discussing preparation for plea proceeding)).[7]  Mr. Akintola also claims that he was not aware of the rights that he would be waiving by pleading guilty.  (Def. 2255 Reply 4).  Here, too, the Court carefully reviewed with Mr. Akintola "the rights that you have, and that you would be waiving by entering a plea of guilty."  (Plea Tr. 4, 8-14; *see also id.* at 8 (answering in the affirmative the Court's inquiry regarding whether Mr. Akintola's attorney had "explained to you the consequences of entering a plea of guilty")).

Finally, Mr. Akintola suggests that his plea was invalid because counsel advised him that the plea deal he had worked out with the Government called for no or minimal jail time.  (*See* Def. 2255 Br. 7).  On this point, Mr. Touger's affidavit makes clear that no such representations were made to Mr. Akintola, and the Court credits Mr. Touger's statements.  (Touger Aff. ¶¶ 12-13, 17, 20).

---

[7]      In his opening submission, Mr. Akintola asserts that Mr. Touger failed to explain to him the crimes of mail and wire fraud.  (Def. 2255 Br. 6).  Such arguments have less force in this case, where Mr. Akintola pleaded to the offense of conspiracy to commit money laundering.  Undaunted, on reply, Mr. Akintola suggests that his invocation of those offenses proves that he was not aware of the charges against him then or now.  (Def. 2255 Reply 2).  The Court rejects out of hand this revisionist argument.

Mr. Touger's recollection also accords with the Plea Agreement in this case, which contained a stipulated Guidelines range of 57 to 71 months' imprisonment and no indication that the Government would support a lower sentence.  (*See* Plea Agmt. 3).  In any event, the Court made clear to Mr. Akintola during his guilty plea that "no one can predict for you with any confidence what your ultimate sentence will be" (Plea Tr. 24), and Mr. Akintola confirmed that he understood (*id.*; *see also id.* at 33-34 (confirming no side agreements with the Government)).  There are, therefore, no Rule 11 violations — much less violations sufficient to constitute plain error — that Mr. Akintola has identified, and thus no basis under that rule to vacate Mr. Akintola's conviction.

### d.    Mr. Akintola Has No Other Claim of Ineffectiveness

To the extent that Mr. Akintola's ineffectiveness claims are predicated on violations of the Speedy Trial Act or Rule 11, they fail for the reasons just described.  However, sprinkled amongst Mr. Akintola's Speedy Trial Act and Rule 11 claims are more generalized allegations of ineffectiveness on the part of Mr. Touger.  These include claims that Mr. Touger did not review the discovery (or, at the very least, did not review it with Mr. Akintola), did not meet with Mr. Akintola a sufficient number of times, and did not adequately investigate Mr. Akintola's case before advising him to take a guilty plea.  (*See* Def. 2255 Br. 7; Def. 2255 Reply 2-3).  On these issues, the Court credits Mr. Touger's sworn statements regarding his extensive review of the inculpatory evidence against Mr. Akintola and his multiple meetings (in-person and virtual) with Mr.

Akintola and his family, all of which evince Mr. Touger's careful attention to this case and his zealous advocacy on behalf of his client.  (*See* Touger Aff.).[8]

In short, Mr. Akintola has identified no basis for vacatur of his conviction, and no basis for finding a deficiency in Mr. Touger's representation. The Court therefore need not undertake a prejudice inquiry, and can simply deny Mr. Akintola's ineffectiveness claims at the first prong of the analysis, and the remainder of his Section 2255 claims on their merits.

## B.    The Court Denies Mr. Akintola's Section 3582(c)(2) Motion

### 1.    Guidelines Amendment 821

After Amendment 821 to the United States Sentencing Guidelines Manual became effective on November 1, 2023, Mr. Akintola moved for a sentence reduction pursuant to its "zero points" provision.  (Dkt. #272).  Mr. Akintola recited that he had been sentenced based on a total adjusted offense level of 25 and a Criminal History Category of I, yielding a Guidelines range of 57 to 71 months' imprisonment.  (*Id.* at 2).  He sought a further reduction pursuant to the newly-added U.S.S.G. § 4C1.1, which specifies a two-level reduction in offense level for certain offenders with zero criminal history points. U.S.S.G. § 4C1.1.  As additional support, Mr. Akintola noted that he "has taken his transformation seriously," including by maintaining close contact with

---

[8]    In addition, the Court gained additional perspective from presiding over the trial of Mr. Akintola's co-defendant, Nadine Wade, during which trial the Court was presented with still more evidence of Mr. Akintola's guilt of the money laundering conspiracy.  (*See, e.g.*, Trial Transcript 762-63 (references to co-conspirator "Tommy"); Government Exhibit 148B at 38-41 (evidencing CashApp transfers to "Tommy")).  The totality of the evidence presented to the Court over the life of this case undermines any claim of prejudice by Mr. Akintola.

28

family, attending religious services, and participating in BOP programming. (*Id.*; *see also id.* (noting "immaculate prison conduct record")).

The United States Probation Office has conducted of review of defendants who are currently incarcerated and who might be eligible for a sentencing reduction pursuant to Amendment 821. The Probation Office has determined that Mr. Akintola is eligible for the two-level offense level reduction for offenders with zero criminal history points. (*See* Dkt. #271 (Supplemental Presentence Report)). It has further determined that Mr. Akintola's revised Guidelines range would now be 46 to 57 months' imprisonment, based on an adjusted offense level of 23 and a Criminal History Category of I. (*Id.* at 3). The Probation Office also reports that Mr. Akintola has not received any disciplinary infractions while in custody, and that during that time he has participated in both educational programs and work assignments. (*Id.* at 3-4).

### 2.    Motions for Sentence Reductions Pursuant to 18 U.S.C. § 3582(c)(2)

Pursuant to 18 U.S.C. § 3582(c)(2), a court may reduce a defendant's term of imprisonment

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission ... after considering the [Section 3553(a) factors,] if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2); *see also United States* v. *Martin*, 974 F.3d 124, 136, 139 (2d Cir. 2020). A court may not reduce a defendant's term of imprisonment

pursuant to 18 U.S.C. § 3582(c)(2) "to a term that is less than the minimum of the amended guideline range."  U.S.S.G. § 1B.10(b)(2)(A) & cmt. n.3.

When presented with a motion to reduce a sentence pursuant to Section 3582(c)(2), the district court must first "determine the amended guideline range that would have been applicable to the defendant if [the amendment] had been in effect at the time the defendant was sentenced." *United States* v. *Zapatero*, 961 F.3d 123, 127 (2d Cir. 2020) (quoting U.S.S.G. § 1B1.10(b)(1)); *see also Dillon* v. *United States*, 560 U.S. 817, 827 (2010); *Martin*, 974 F.3d at 136.  "If a defendant qualifies, Section 1B1.10 directs a court to consider the § 3553(a) factors, 'the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment,' and 'post-sentencing conduct of the defendant that occurred after imposition of the term of imprisonment.'" *United States* v. *Hutsona*, No. 21 Cr. 299 (JMF), 2024 WL 1178984, at *1 (S.D.N.Y. Mar. 19, 2024) (quoting U.S.S.G. § 1B1.10 note 1(B)).[9]

---

[9]      *See also United States* v. *Smerling*, No. 21 Cr. 317 (DLC), 2024 WL 1208908, at *2 (S.D.N.Y. Mar. 21, 2024):

> The applicable policy statement in the Sentencing Guidelines states that a defendant is eligible for a sentence reduction based on a subsequently lowered sentencing range so long as the amendment is retroactive, *see* U.S.S.G. § 1B1.10(a)(2)(A), and actually lowers the defendant's Guidelines range. *Id.* § 1B1.10(a)(2)(B).  It requires a court to consider the factors set forth in 18 U.S.C. § 3553(a) as well as the "nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment" in determining whether to reduce the sentence and the extent of the reduction. *Id.* § 1B1.10, Application Note 1(B)(i)-(ii).  A court may also consider a defendant's post-sentencing conduct. *Id.* § 1B1.10, Application Note 1(B)(iii).

Even when a defendant is eligible for a reduction, "a sentencing court has discretion to deny a motion to reduce a sentence pursuant to § 3582(c)(2)." *United States* v. *Brooks*, 891 F.3d 432, 436 (2d Cir. 2018); *accord United States* v. *Moore*, 975 F.3d 84, 88 (2d Cir. 2020); *United States* v. *Christie*, 736 F.3d 191, 195 (2d Cir. 2013).  As noted, in deciding whether to reduce a sentence, a court should consider "how it would have sentenced" the defendant if the newly-calculated Guidelines range had been in effect at the time of the original sentence.  *Brooks*, 891 F.3d at 437.  If the court would have imposed a lower sentence, the court should ask "why it is appropriate to keep in place" a higher sentence.  *Id.*

Amendment 821 went into effect on November 1, 2023, and was made retroactive by the United States Sentencing Commission.  *See* U.S.S.G. § 1B1.10(d).  Part A of Amendment 821 provides for resentencing and a sentence reduction for defendants who, among other things, "committed the instant offense while under any criminal justice sentence."  *See* U.S.S.G. § 4A1.1.  Part B of Amendment 821 — the part relevant here — provides for resentencing and a two-level decrease in the Offense Level where: (i) a defendant had no criminal history points at sentencing, and (ii) a defendant's offense did not include any of the nine disqualifying factors listed in Section 4C1.1(a), including, among other things, the use of violence or a credible threat of violence, death or serious bodily injury, the use or possession of a firearm or dangerous weapon, or terrorism.  *See* U.S.S.G. § 4C1.1(a)(1)-(10).

31

### 3. Analysis

The Court finds that Mr. Akintola is eligible for a sentence reduction and adopts the above calculations, yielding his now-applicable Guidelines range of 46 to 57 months' imprisonment.  Notwithstanding Mr. Akintola's eligibility for a sentencing reduction, the Court exercises its discretion to decline to reduce his sentence.

The Court has considered, again, all of the Section 3553(a) factors that it considered at the original sentencing.  Put simply, the factors that mattered at that sentencing continue to matter, including

- the nature and circumstances of the offense and the history and characteristics of the defendant; [and]

- the need for the sentence imposed — (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [and] (B) to afford adequate deterrence to criminal conduct[.]

18 U.S.C. § 3553(a)(1), (2)(A)-(B).  Mr. Akintola's offense conduct was particularly serious.  It persisted over a period of years; preyed on vulnerable victims; and resulted (in the aggregate) in millions of dollars in losses.  And when Mr. Akintola was arrested, he both lied to law enforcement officers and continued to draw from the ill-gotten proceeds of his fraudulent conduct while on pretrial release.

The Court acknowledges, and commends Mr. Akintola on, the strides that he has made while incarcerated, and the absence of any disciplinary issues in prison.  However, other aspects of Mr. Akintola's post-sentencing conduct remain a cause for the Court's concern.  Just a few months after

beginning his term of imprisonment, Mr. Akintola filed a baseless Section 2255 motion that lobbed false accusations of misconduct against his prior counsel *and* the Court.  While these accusations were easily disproven, the fact that Mr. Akintola would revert so quickly to fraudulent conduct gives the Court pause on the issues of both specific deterrence and recidivism.  Given the seriousness of the original conduct, and the degree of falsity in the Section 2255 motion, this Court elects not to reduce Mr. Akintola's sentence, but rather to retain what remains a within-Guidelines sentence of 57 months' imprisonment.  *See, e.g.*, *United States* v. *Kozel*, No. 19 Cr. 460 (KMW), 2024 WL 694102, at *2 (S.D.N.Y. Feb. 20, 2024) (denying motion for sentence reduction under Amendment 821 despite defendant's eligibility, on ground that "the § 3553(a) factors and [defendant's] post-sentencing conduct weigh against a reduction"); *United States* v. *Elendu*, No. 20 Cr. 179-14 (DLC), 2024 WL 458643, at *3 (S.D.N.Y. Feb. 6, 2024) (denying motion for sentence reduction under Amendment 821 despite defendant's eligibility, based on his "egregious" criminal conduct, the "significant need for individual deterrence," and the fact that each of the § 3553(a) factors "continues to weigh against a reduction of his sentence").

## CONCLUSION

For the reasons stated above, the Court DENIES Mr. Akintola's motion to vacate, set aside, or correct his conviction, and DENIES his motion for a sentence reduction.  Because Mr. Akintola has not made a substantial showing of the denial of a constitutional right with respect to his Section 2255 Motion, the Court will not issue a certificate of appealability.  *See* 28 U.S.C. § 2253(c). The Court further certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate the motions at docket entries 231 and 272, to close the case docketed at No. 23 Civ. 3839, and to mail a copy of this Opinion and the related AO247 form to Mr. Akintola at his address of record.  If Mr. Akintola wishes to review the Probation Office's eligibility memo, he may do so through his case manager.

SO ORDERED.

Dated:   April 10, 2024
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

34